**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**STERLINGTON, PLLC**
Jennifer Czeisler *(PHV Application forthcoming)*
*jen.czeisler@sterlingtonlaw.com*
Edward Ciolko *(PHV application forthcoming)*
*edward.ciolko@sterlingtonlaw.com*
One World Trade Center
85th Floor
New York, NY 10007
Tel: (516) 457-9571

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY GETMAN and STEPHANIE EVANGELISTA on behalf of themselves and all others who are similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TICKETMASTER, LLC, and LIVE NATION ENTERTAINMENT, INC.,<br><br>Defendants. | Case No: 2:24-cv-4580<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

## CLASS ACTION COMPLAINT

Plaintiffs Amy Getman and Stephanie Evangelista (collectively, "**Plaintiffs**"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "**Complaint**"), and allege the following against Defendant Live Nation Entertainment, Inc., and Defendant Ticketmaster, LLC ("**Ticketmaster**") (collectively, "**Defendants**"), based upon personal knowledge with respect to themselves and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Plaintiffs and other similar situated individuals' personal identifiable information ("**PII**"), including "names, addresses, phone numbers, and partial credit card details."[1]

2.      This class action arises out of the recent targeted cyberattack by infamous cybercrime group known as ShinyHunters, which gained access to access Defendants' computer systems and data, resulting in the compromise of highly sensitive PII (the "**Data Breach**").[2]

3.      As a result of the Data Breach, Plaintiffs and Class Members suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the imminent risk of future harm caused by the compromise of their PII.

---

[1]      https://www.cbsnews.com/news/ticketmaster-breach-shinyhunters-560-million-customers/ (last accessed May 30, 2024).

[2]      https://thehill.com/homenews/nexstar_media_wire/4692567-ticketmaster-data-breach-hackers-claim-over-500-million-users-compromised/ (last accessed May 30, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265    P: (213) 788-4050    F: (213) 788-4070  |  clarksonlawfirm.com

4.     The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' Private Information.

5.     On or around May 28, 2024, CyberDaily, an Australian-based news outlet that delivers breaking news, market intelligence and insights for Australia's cyber sector first reported the Data Breach, stating that hackers posted the "price tag" for PII on a dark web forum.[3]

6.     This was not a passive data breach where, for example, it is unclear whether the compromised data was targeted or even seen. Here, the Data Breach occurred as a result of an unauthorized third-party gaining access to and obtaining Defendants' customers' PII from internal computer systems.[4]

7.     The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Personal Information from the foreseeable threat of a cyberattack.

8.     By being entrusted with Plaintiffs' and Class members' PII for their own pecuniary benefit, Defendants assumed a duty to Plaintiffs and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard Plaintiffs' and Class Members' PII against unauthorized access and disclosure.

9.     Defendants also had a duty to adequately safeguard this PII under controlling case law, as well as pursuant to industry standards and duties imposed by statutes, including Section 5 of the Federal Trade Commission Act (the "**FTC Act**").

---

[3]     https://www.cyberdaily.au/security/10632-hackers-claim-ticketmaster-live-nation-data-breach-more-than-500m-compromised (last accessed May 30, 2024).

[4]     https://www.abc.net.au/news/2024-05-30/ticketmaster-data-breach-how-to-check-if-you-have-been-hacked/103912494 (last accessed May 30, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

10.   Defendants breached those duties by, among other things, failing to implement and maintain reasonable security procedures and practices to protect the PII in its possession from unauthorized access and disclosure.

11.   As a result of Defendants' inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiffs and Class Members suffered injury and ascertainable losses in the form of out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, the diminution in value of their personal information from their exposure, and the present and imminent threat of fraud and identity theft. This action seeks to remedy these failings and their consequences.

12.   Despite having been accessed and exfiltrated by unauthorized criminal actors, Plaintiffs' and Class Members' sensitive and confidential PII remains in Defendants' possession. Absent additional safeguards and independent review and oversight, the information remains vulnerable to further cyberattacks and theft.

13.   Defendants disregarded the rights of Plaintiffs and Class Members by, *inter alia*, failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to properly train its staff and employees on proper security measures; and failing to provide Plaintiffs and Class Members prompt and adequate notice of the Data Breach.

14.   In addition, Defendants failed to properly monitor the computer network and systems that housed the PII. Had Defendants properly monitored these electronic systems, Defendants would have discovered the intrusion sooner or prevented it altogether.

15.   The security of Plaintiffs' and Class Members' identities is now at substantial risk because of Defendants' wrongful conduct as the PII that Defendants

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

collected and maintained is now in the hands of data thieves. This present risk will continue for the course of their lives.

16.   Armed with the PII accessed in the Data Breach, data thieves can commit a wide range of crimes.

17.   As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Among other measures, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft. Further, Plaintiffs and Class Members will incur out-of-pocket costs to purchase adequate credit monitoring and identity theft protection and insurance services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

18.   Plaintiffs and Class Members will also be forced to expend additional time to review credit reports and monitor their financial accounts for fraud or identity theft. And because the exposed other immutable personal details, the risk of identity theft and fraud will persist throughout their lives.

19.   Plaintiffs bring this lawsuit on behalf of themselves and all of those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information was unsecured and left open to the unauthorized access of any unknown third party.

20.   Plaintiffs, on behalf of themselves and all other Class Members, bring claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, and for declaratory and injunctive relief. To remedy these violations of law, Plaintiffs and Class Members thus seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendants' data security protocols and employee training practices), reasonable attorneys' fees,

CLASS ACTION COMPLAINT

costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## **JURISDICTION AND VENUE**

21.   This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: (i) the amount in controversy exceeds $5 million, exclusive of interest and costs; (ii) the number of class members exceeds 100 and (iii) minimal diversity exists because many class members, including Plaintiffs have different citizenships from Defendants.

22.   This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws, rights, and benefits of the State of California. Defendants are headquartered in California and has engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district; (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in California and in this judicial District.

23.   This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

24.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendants are based in this District, maintains Plaintiffs' and Class Members' Private Information in this District, and has caused harm to Plaintiffs and Class Members in this District.

CLASS ACTION COMPLAINT

**PARTIES**

***Plaintiff Amy Getman***

25.  At all relevant times, Plaintiff Amy "Katie" Getman ("**Plaintiff Getman**") is and has been a citizen of the State of Georgia.

26.  Plaintiff Getman created an account on Defendants' Ticketmaster/LiveNation website in or around the summer of 2017 to purchase event tickets. Plaintiff Getman provided her PII to Defendants when opening her account.

27.  Since opening her account, Plaintiff Getman has made at least ten event ticket purchases using her Ticketmaster/LiveNation website account.

28.  Plaintiff Getman's account with Defendants remains active.

29.  Plaintiff Getman is deeply concerned about the Data Breach because she frequently uses Ticketmaster to purchase event tickets. Plaintiff Getman continues to worry about her Private Information, as it is readily available for cybercriminals to sell, buy, and exchange, on the Dark Web.

30.  Since learning about the Data Breach, Plaintiff Getman spent several hours researching the data breach to determine the extent and gravity of the Data Breach and anticipates needing to spend substantial additional time to monitor the effects on her credit and bank accounts, as well as mitigate damages. Plaintiff Getman will need to review for fraudulent activity and closely monitor her financial information.

31.  Plaintiff Getman has a continuing interest in ensuring that her Private Information, which remains in Defendants' possession, is protected, and safeguarded from future breaches.

***Plaintiff Stephanie Evangelista***

32.  At all relevant times, Plaintiff Evangelista is, and has been, a citizen of the State of Georgia.

6

CLASS ACTION COMPLAINT

33.   On June 12, 2022, Plaintiff Evangelista created an account on Defendants' Ticketmaster/LiveNation website to purchase event tickets. Plaintiff Evangelista provided her PII to Defendants when opening her account.

34.   Since opening her account, Plaintiff Evangelista has made at least two event ticket purchases using her Ticketmaster/LiveNation website account.

35.   Plaintiff Evangelista's account with Defendants remains active.

36.   Plaintiff Evangelista is deeply concerned about the Data Breach because, as a result of the Data Breach, her Private Information is readily available for cybercriminals to sell, buy, and exchange, on the Dark Web.

37.   Since learning about the Data Breach, Plaintiff Evangelista has spent several hours researching the data breach to determine the extent and gravity of the Data Breach and anticipates spending substantial additional time to mitigate any future damages. Plaintiff Evangelista will further need to review all of her existing accounts for fraudulent activity and closely monitor her financial information.

38.   Plaintiff Evangelista has a continuing interest in ensuring that her Private Information, which remains in Defendants' possession, is protected, and safeguarded from future breaches.

### Defendant Ticketmaster, LLC

39.   Defendant Ticketmaster, LLC ("**Ticketmaster**") is a wholly owned subsidiary of Defendant Live Nation Entertainment, Inc.

40.   Ticketmaster is a limited liability company organized and existing under the laws of Virginia with its principal place of business in Hollywood, California.

41.   Ticketmaster is the largest ticketing company in the United States, with 2022 revenue of Approximately $16.7 billion.[5]

---

[5] https://www.zippia.com/ticketmaster-careers-41797/revenue/ (last accessed May 30, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

42.   Plaintiffs and Class Members are current and former customers of Ticketmaster and account holders on Ticketmaster.com.

43.   Due to the nature of the services Ticketmaster provides, it receives and is entrusted with securely storing customers' Private Information, which includes, inter alia, individuals' full name, payment information, occasional location data, and other sensitive information.

44.   Ticketmaster promised to provide confidentiality and adequate security for the data it collected from customers through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

### *Defendant Live Nation Entertainment, Inc.*

45.   Defendant Live Nation Entertainment, Inc. ("**Live Nation**") is a Delaware corporation with its principal place of business in Beverly Hills, California.

46.   Live Nation is the largest entertainment company in the world, connecting over half a billion fans across all its platforms in 29 countries.

## FACTUAL ALLEGATIONS

### *A.   The Data Breach, Defendants' Unsecure Data Management, and Disclosure of Data Breach*

47.   On or around May 28, 2024, CyberDaily, an Australian-based tech outlet first reported that the infamous cybercrime group called ShinyHunters posted on the dark web, a price tag for the PII it unlawfully obtained from Defendants.[6]

48.   On or around May 28, 2024, it was subsequently reported that the Private Information of 560,000,000 Ticketmaster customers were compromised and listed for sale.[7]

---

[6]      https://www.cyberdaily.au/security/10632-hackers-claim-ticketmaster-live-nation-data-breach-more-than-500m-compromised (last accessed May 30, 2024).

[7]      https://www.abc.net.au/news/2024-05-29/ticketmaster-hack-allegedlyshinyhunter-customers-data-leaked/103908614 (last accessed May 30, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

49.    As of May 29, 2024, Defendants have not released a statement nor notified its customers that their Private Information has been compromised and is likely in the hands of cybercriminals. Plaintiffs and Class Members are therefore in the dark, unaware that their Private Information may be used to effectuate identity theft, phishing scams, plunging credit scores and other related cybercrimes.

50.    Plaintiffs and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

51.    Data security is purportedly a critical component of Defendants' business model. On a section of Ticketmaster's website, for example, Ticketmaster makes the following statements:

> "Our goal is to maintain your trust and confidence by handling your personal information with respect and putting you in control…As a global company, our fans are located all over the world, depending on your market there are specific laws and regulations around privacy rights such as the GDPR in Europe, LGPD in Brazil and CCPA in United States…We have security measures in place to protect your information."[8]

52.    On its website, Defendants also maintain a privacy policy section, stating its compliance with the various international data privacy frameworks and laws of the United States.[9]

53.    Contrary were Defendants various express assurances that it would take reasonable measures to safeguard the sensitive information entrusted to it – and only share it for an express authorized persons – an "unauthorized" person or persons was

---

[8] https://privacy.ticketmaster.com/privacy-policy (last accessed May 30, 2024)

[9]    *Id.*;    https://help.livenation.com/hc/en-us/articles/10464047306641-Live-Nation-Entertainment-Privacy-Policy (last accessed May 30, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265    P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

able to access its network servers.

54.   To date, Defendants have not disclosed specifics of the attack.

55.   As such, Defendants failed to secure the PII of the individuals that provided them with this sensitive information. They failed to take appropriate steps to protect the PII of Plaintiffs and other Class Members from being disclosed.

### B.   Defendants Failed to Comply with FTC Guidelines

56.   Defendants were prohibited by the Federal Trade Commission Act (the "**FTC Act**") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "**FTC**") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

57.   The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

58.   In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[10] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system;

---

[10]   https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed May 2, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

and have a response plan ready in the event of a breach.[11]

59.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

60.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("**FTCA**"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61.    These FTC enforcement actions include actions against healthcare providers and partners like Defendants. *See, e.g., In the Matter of Labmd, Inc., A Corp,* 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

62.    Defendants failed to properly implement basic data security practices.

63.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

64.    Defendants were at all times fully aware of the obligation to protect the Private Information of customers and patients. Defendants were also aware of the significant repercussions that would result from their failure to do so.

---

[11] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

### C. Plaintiffs and the Class Have Suffered Injury as a Result of Defendants' Data Mismanagement

65.   As a result of Defendants' failure to implement and follow even the most basic security procedures, Plaintiffs and Class Members' PII have been and are now in the hands of an unauthorized third-party which may include thieves, unknown criminals, banks, credit companies, and other potentially hostile individuals. Plaintiffs and other Class Members now face an increased risk of identity theft and will consequentially have to spend, and will continue to spend, significant time and money to protect themselves due to Defendants' Data Breach.

66.   Plaintiffs and other Class Members have had their most personal and sensitive Private Information disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

67.   Plaintiffs and Class Members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and prolonged anxiety and fear, as they will be at risk for falling victim for cybercrimes for years to come.

68.   PII is a valuable property right.[12] The value of PII as a commodity is measurable. "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing

---

[12] *See* Marc van Lieshout, The Value of Personal Data, 457 IFIP Advances in Information and
Communication          Technology          (May          2015),
https://www.researchgate.net/publication/283668023
("The value of [personal] information is well understood by marketers who try to collect as much
data about personal conducts and preferences as possible..."). (last visited February 14, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

legal and regulatory frameworks."[13] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[14] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

69.    As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and become more valuable to thieves and more damaging to victims.

70.    Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[15] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web. Criminals can also purchase access to entire company data breaches from $900 to $4,500.[16]

---

[13] *See* Robert Lowes, Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black
Market, Medscape (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192 .(last visited February 14, 2024).

[14] U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use
Solutions in 2018, Up 17.5% from 2017, Interactive Advertising Bureau (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last visited February 14, 2024).

[15] Anita George, Your personal data is for sale on the dark web. Here's how much it costs,    Digital    Trends    (Oct.    16,    2019),    accessible    at https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs// (last visited February 14, 2024).

[16] Brian Stack, Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian (Dec. 6, 2017), accessible at https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited February 14, 2024).

13

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

71.   Consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[17]

72.   Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

73.   Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals... because they often have lesser IT defenses and a high incentive to regain access to their data quickly.[18]

74.   Plaintiffs and members of the Class must immediately devote time, energy, and money to: 1) closely monitor their bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services and pay to procure them. Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or

---

[17] Janice Y. Tsai et al., The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study, 22(2) Information Systems Research 254 (June 2011), accessible at  https://www.jstor.org/stable/23015560?seq=1 (last accessed December 8, 2023).

[18] Ben Kochman, FBI, Secret Service Warn of Targeted Ransomware, Law360 (Nov. 18, 2019), accessible at https://www.law360.com/articles/1220974 (last accessed December 8, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050  F: (213) 788-4070   |   clarksonlawfirm.com

contained against future misuse. For this reason, Plaintiffs and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, because of Defendants' conduct. Further, the value of Plaintiffs' and Class Members' Private Information has been diminished by its exposure in the Data Breach.

75.   As a result of Defendants' failures, Plaintiffs and Class Members are at substantial risk of suffering identity theft and fraud or misuse of their Private Information.

76.   Plaintiffs and members of the Class suffered actual injury from having PII compromised as a result of Defendants' negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution in the value of their PII, a form of property that Defendants obtained from Plaintiffs; (b) violation of their privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

77.   For the reasons mentioned above, Defendants' conduct, which allowed the Data Breach to occur, caused Plaintiffs and members of the Class these significant injuries and harm.

78.   Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Private Information and for failing to provide timely, accurate, and adequate notice to Plaintiffs and other Class Members that their Private Information had been compromised.

79.   Plaintiffs, individually and on behalf of all other similarly situated individuals, allege claims in negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, violations of the California Consumer Privacy Act and California Legal Remedies Act, and California's Unfair Competition Law.

///

///

///

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

80.   Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated ("**the Class**").

81.   Plaintiffs propose the following Class and Subclass definitions, subject to amendment(s) as appropriate:

### Nationwide Class

> All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach, including all individuals who were sent a notice of the Data Breach ("**the Class**").

### California Subclass

> All individuals identified by Defendant (or its agents or affiliates) as being those persons residing in California impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "**California Subclass**").

82.   Collectively, the Class and California Subclass are referred to as the Classes.

83.   Excluded from the Class are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

84.   Plaintiffs reserve the right to amend or modify the Class or Subclass definitions as this case progresses.

85.   **Numerosity:** Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

86.   **Existence/Predominance of Common Questions of Fact and Law:** There are questions of law and fact common to the Class, which predominate over any

questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

    b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

    e. Whether Defendants' owed a duty to Class Members to safeguard their PII;

    f. Whether Defendants were subject to (and breached) the FTC Act, the California Confidentiality of Medical Information Act and/or the CCPA;

    g. Whether Defendants breached their duties to Class Members to safeguard their PII;

    h. Whether computer hackers obtained Class Members' PII in the Data Breach;

    i. Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

    j. Whether Defendants' conduct was negligent;

    k. Whether Defendants acts breaching an implied contract they formed with Plaintiffs and the Class Members;

    l. Whether Defendants were unjustly enriched to the detriment of Plaintiffs and the Class;

    m. Whether Defendants failed to provide notice of the Data Breach in a timely manner; and

CLASS ACTION COMPLAINT

n. Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

87. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, were compromised in the Data Breach.

88. **Adequacy:** Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex class action litigation—including consumer fraud and automobile defect class action cases— and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their experienced counsel.

89. **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendants. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based upon, inter alia, the records (including databases, e-mails, dealership records and files, etc.) Defendants maintain regarding their consumers.

CLASS ACTION COMPLAINT

90.   Defendants have acted, and refuse to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**CLAIMS FOR RELIEF**

**COUNT 1**

**NEGLIGENCE**

*(On Behalf of Plaintiffs and the Nationwide Class)*

91.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

92.   Defendants owed a duty to Plaintiffs and all other Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

93.   Defendants knew, or should have known, the risks of collecting and storing Plaintiffs' and all other Class Members' PII and the importance of maintaining secure systems. Defendants knew, or should have known, of the vast uptick in data breaches in recent years. Defendants had a duty to protect the PII of Plaintiffs and Class Members.

94.   Given the nature of Defendants' business, the sensitivity and value of the PII they maintain, and the resources at its disposal, Defendants should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring, which Defendants had a duty to prevent.

95.   Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiffs' and Class Members' PII.

CLASS ACTION COMPLAINT

96.   It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members' PII to unauthorized individuals.

97.   But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiffs and Class Members, their PII would not have been compromised.

98.   As a result of Defendants' above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well- established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) actual or attempted fraud.

**COUNT II**

**NEGLIGENCE PER SE**

***(On Behalf of Plaintiffs and the Nationwide Class)***

99.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

100. Defendants' duties arise from Section 5 of the FTC Act ("**FTCA**"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce,"

CLASS ACTION COMPLAINT

including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendants', of failing to employ reasonable measures to protect and secure PII.

101. Defendants violated Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiffs' and all other Class Members' PII and not complying with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiffs and the other Class Members.

102. Defendants' violations of Security Rules and Section 5 of the FTCA constitute negligence per se.

103. Plaintiffs and Class Members are within the class of persons that Security Rules and Section 5 of the FTCA were intended to protect.

104. The harm occurring because of the Data Breach is the type of harm Security Rules and Section 5 of the FTCA were intended to guard against.

105. It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiffs' and Class Members' PII to unauthorized individuals.

106. The injury and harm that Plaintiffs and the other Class Members suffered was the direct and proximate result of Defendants' violations of Security Rules and Section 5 of the FTCA. Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv)

deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach; and (vi) actual or attempted fraud.

## COUNT III

### BREACH OF FIDUCIARY DUTY

#### *(On Behalf of Plaintiffs and the Nationwide Class)*

107. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

108. Plaintiffs and Class Members either directly or indirectly gave Defendants their PII in confidence, believing that Defendants would protect that information. Plaintiffs and Class Members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiffs' and Class Members' PII created a fiduciary relationship between Defendants and Plaintiffs and Class Members. Considering this relationship, Defendants must act primarily for the benefit of their consumers, which includes safeguarding and protecting Plaintiffs' and Class Members' PII.

109. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship. They breached that duty by failing to properly protect the integrity of the system containing Plaintiffs' and Class Members' PII, failing to safeguard the PII of Plaintiffs and Class Members they collected.

110. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PIII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendants' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) actual or attempted fraud.

**COUNT IV**

**UNJUST ENRICHMENT**

***(On Behalf of Plaintiffs and the Nationwide Class)***

111. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein. This claim is pleaded in the alternative to the implied contract claim pursuant to Fed. R. Civ. P. 8(d).

112. Plaintiffs and Class Members conferred a monetary benefit upon Defendants in the form of monies paid for production services or other services.

113. Defendants accepted or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members. Defendants also benefitted from the receipt of Plaintiffs' and Class Members' PII.

114. As a result of Defendants' conduct, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiffs and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

115. Defendants should not be permitted to retain the money belonging to Plaintiffs and Class Members because Defendants failed to adequately implement the data privacy and security procedures for itself that Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards.

116. Defendants should be compelled to provide for the benefit of Plaintiffs and Class Members all unlawful proceeds received by it because of the conduct and Data

**CLASS ACTION COMPLAINT**

Breach alleged herein.

**COUNT V**

**BREACH OF IMPLIED CONTRACT**

***(On Behalf of Plaintiffs and the Nationwide Class)***

117. Plaintiffs reallege and incorporate by reference all allegations of the preceding factual allegations as though fully set forth herein.

118. Defendants required Plaintiffs and Class Members to provide, or authorize the transfer of, their PII for Defendants to provide services. In exchange, Defendants entered implied contracts with Plaintiffs and Class Members in which Defendants agreed to comply with their statutory and common law duties to protect Plaintiffs' and Class Members' PII and to timely notify them in the event of a data breach.

119. Plaintiffs and Class Members would not have provided their PII to Defendants had they known that Defendants would not safeguard their PII, as promised, or provide timely notice of a data breach.

120. Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendants.

121. Defendants breached the implied contracts by failing to safeguard Plaintiffs' and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

122. The losses and damages Plaintiffs and Class Members sustained (as described above) were the direct and proximate result of Defendants' breach of their implied contracts with Plaintiffs and Class Members.

///

///

///

///

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

**COUNT VI**

**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018**

**Cal. Civ. Code §§ 1798.100 et seq. ("CCPA")**

***(On Behalf of Plaintiffs and the California Subclass)***

123. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

124. As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access.

125. As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on certain businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected.

126. Defendants are subject to the CCPA and failed to implement such procedures which resulted in the Data Breach.

127. Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure because of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

128. Plaintiffs are a "consumer" as defined by Civ. Code § 1798.140(g) because he is natural person residing in the state of California.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   P: (213) 788-4070   F: (213) 788-4070   |   clarksonlawfirm.com

129. Defendants are both a "business" as defined by Civ. Code, § 1798.140(c).

130. The CCPA provides that "personal information" includes "[a]n individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted . . . (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account." *See* Civ. Code, § 1798.150(a)(1); Civ. Code, § 1798.81.5(d)(1)(A).

131. Plaintiffs' Private Information compromised in the Data Breach constitutes "personal information" within the meaning of the CCPA.

132. Through the Data Breach, Plaintiffs' private information was accessed without authorization, exfiltrated, and stolen by criminals in a nonencrypted and/or nonredacted format.

133. The Data Breach occurred because of Defendants' failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

134. Simultaneously herewith, Plaintiffs are providing notice to Defendants pursuant to Civ. Code, § 1798.150(b)(1), identifying the specific provisions of the CCPA. Plaintiffs allege Defendants have violated or are violating. Although a cure is not possible under the circumstances, if (as expected) Defendants are unable to cure or do not cure the violation within 30 days, Plaintiffs will amend this Complaint to pursue actual or statutory damages as permitted by Civ. Code, § 1798.150(a)(1)(A).

135. As a result of Defendants' failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiffs seek statutory damages of up to $750 per class member (and no less than $100 per class member), actual damages to the extent they exceed statutory damages, injunctive and declaratory relief, and any other relief as deemed appropriate by the Court.

## COUNT VII

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

### Cal. Civ. Code §§ 1750 et seq. ("CLRA")

### *(On Behalf of Plaintiffs and the California Subclass)*

136. Plaintiffs reallege and incorporate by reference every allegation contained elsewhere in this Complaint as if fully set forth herein.

137. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "**CLRA**"), Civ. Code § 1750, *et seq*. This cause of action does not seek monetary damages currently but is limited solely to injunctive relief. Plaintiffs will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by Civ. Code, § 1782.

138. Plaintiffs and Class Members are "consumers," as the term is defined by Civ. Code, § 1761(d).

139. Plaintiffs, Class Members and Defendants have engaged in "transactions," as that term is defined by Civ. Code, § 1761(e).

140. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct undertaken by Defendant was likely to deceive consumers.

141. Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

142. Defendants violated this provision by representing that Defendants took appropriate measures to protect Plaintiffs' and the Class Members' PII. Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

143. As a result, Plaintiffs and the Class Members were induced to provide their PII to Defendants.

27

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

144. As a result of engaging in such conduct, Defendant shave violated Civ. Code, § 1770.

145. Pursuant to Civil Code section 1780, subdivision (a)(2) and (a)(5), Plaintiffs seek an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

146. Plaintiffs and the Class Members suffered injuries caused by Defendants' misrepresentations, because they provided their PII believing that Defendants would adequately protect this information.

147. Plaintiffs and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

148. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the Class.

## COUNT VIII

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW Cal. Bus. and Prof. Code §§ 17200, et seq. ("UCL")

#### *(On Behalf of Plaintiffs and the California Subclass)*

149. Plaintiffs reallege and incorporate by reference all preceding factual allegations as though fully set forth herein.

150. Plaintiffs bring this claim on behalf of themselves and the Class.

151. The California Unfair Competition Law, Bus. & Prof. Code, §17200, *et seq.* ("**UCL**"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

152. By reason of Defendants' above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of Plaintiffs' and Class members' PII, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

153. Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

154. Defendants' practices were unlawful and in violation of the CCPA and CLRA and Defendants' own privacy policy because Defendants failed to take reasonable measures to protect Plaintiffs' and Class members' PII.

155. Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendants will remain private and secure, when in fact it was not private and secure.

156. Plaintiffs and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

157. Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiffs' and Class Members' PII also constitute "unfair" business acts and practices within the meaning of Bus. & Prof. Code, § 17200 *et seq.,* in that Defendants' conduct was substantially injurious to Plaintiffs and Class Members, offensive to public policy, immoral, unethical, oppressive, and unscrupulous, and the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

158. But for Defendants' misrepresentations and omissions, Plaintiffs and Class Members would not have provided their PII to Defendants or would have insisted that their PII be more securely protected.

159. As a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiffs and Class Members' PII, they have been injured as follows:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

(1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants; (3) the increased, imminent risk of fraud and identity theft; (4) the compromise, publication, and/or theft of their PII; and (5) costs associated with monitoring their PII, amongst other things.

160. Plaintiffs take upon themselves enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of PII. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees and costs from the recovery in this action. Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure section 1021.5.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for judgment as follows:

a) For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

b) For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII;

c) For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

d) For an order requiring Defendants to pay for credit monitoring services for Plaintiffs and the Class of a duration to be determined at trial;

e) For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

f) For an award of punitive damages, as allowable by law;

g) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h) Pre- and post-judgment interest on any amounts awarded; and

i) Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: May 31, 2024

**CLARKSON LAW FIRM, P.C.**

By: */s/ Yana Hart*
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**STERLINGTON, PLLC**
Jennifer Czeisler *(PHV forthcoming)*
*jen.czeisler@sterlingtonlaw.com*
Edward Ciolko *(PHV forthcoming)*
*edward.ciolko@sterlingtonlaw.com*
One World Trade Center
85th Floor
New York, NY 10007
Tel: (516) 457-9571

*Attorneys for Plaintiffs and the Proposed Classes*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265   P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com